UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case #00-8560-CIV-RYSKAMP

Victoria Clark Alexander &
Antonio Montez Alexander,

     Plaintiffs,

vs.

Allegro Resorts Corporation, et al.

     Defendants.

_____/



## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

COME NOW Plaintiffs, by and through undersigned counsel, and respectfully submit their memorandum in opposition to Defendants' motion to dismiss for *forum non conveniens* and state:

### I.  INTRODUCTION

The Eleventh Circuit has adopted the following framework for dismissing a suit under the doctrine of *forum non conveniens*:

> As a prerequisite, the court must establish whether an adequate forum exists which possesses jurisdiction over the whole case.  Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing a plaintiff's initial forum choice.  If the trial judge finds this balance of private interest at or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum.  If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

*La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307(11th Cir. 1983) (*citing Pain v United Techs Corp.* 637 F.2d 775, 784-85(DC Cir 1980) *cert. denied*, 454 US 1128 1981)).  "Defendants carry the burden to procure sufficient information to enable the district court to balance the parties interest." *Piper Aircraft Co. v Reyno*, 454 US 235, 258, 102 S.Ct 255 (1981); *La Seguridad* 707 F.2d at 1304 and n.9; *Lugones v. Sandals Resort, Inc.*, 875 F.Supp. 821, 824 (S.D.Fla 1995).

## II.   THE DOMINICAN REPUBLIC IS AN INADEQUATE FORUM FOR THIS CASE

The Supreme Court has found that an adequate alternative forum exists where the defendant is "amenable to process" in the other jurisdiction. *Gulf Oil Corp v. Gilbert* 330 US 501, 506-07 (1947); see *Piper Aircraft*, 454 US at 255.  Ordinarily, a defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis.  See *Veba-Chemieag v. M/V Getafix* 711 F.2d 1243, 1245 (5th Cir. 1983).  In the present case, however, neither of the two defendants moving for dismissal has submitted to the jurisdiction of the Dominican Republic.  To the contrary, Allegro Marketing, a Florida corporation, contends that it has no pertinent contacts with the Bavaro Resort or the Dominican Republic or with the other corporate defendants.  *See Affidavit of Fernando Ruiz (filed by Defendant Allegro Marketing).*  The other relevant corporate defendants, which have just been served, have neither entered appearances, joined in the motion to dismiss for *forum non conveniens*, nor otherwise submitted to Dominican jurisdiction.

2

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

Even if the relevant defendants were all willing to submit to Dominican jurisdiction, and waive any statutory or procedural bars (e.g. statute of limitations), "if the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper*, 454 US 254n. 22.   As part of the *Gilbert* analysis, courts must be sensitive to the practical problems likely to be encountered by plaintiffs in litigating their claim, especially when the alternative forum is a foreign country.  *Wilson v Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1246-47 (7th Cir. 1990).   A district court "must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Lehman v. Humphrey, Ltd*. 713 F.2d 339, 346 (8th Cir. 1983). *cert. denied* 464 U.S. 1042, 104 S.Ct. 708 (1984)  Where the plaintiff is a U.S. citizen, a so-called "alternative forum" without a right to jury trial or ability to obtain *an attorney on a contingent fee basis*, is "really not much of a forum at all." *Reid-Walen v Hansen,* 933 F.2d 1390, 1398 (8th Cir. 1991) (improper to grant *forum non conveniens* dismissal in personal injury case arising in Jamaica); a*ccord, Lugones v. Sandals Resorts, Inc.,* 875 F.Supp. 821, 823-24 (S.D. Fla. 1995); *Jane Doe v. Sun International Hotels*, 11 FLW Fed. D806, No. 97-3359-CIV-GOLD (opinion filed 5-20-98)(denying *forum non conveniens* motion where plaintiff was raped at Bahamas resort).

In the present case, the Court has before it (Exhibit 1, attached) the joint affidavit of Juan Pellerano, Esq. and Hipólito Herrera Vassalo, Esq., licensed attorneys in the Dominican Republic.   The Dominican Republic lacks trial by jury and a realistic opportunity for contingency fee representation. *Id* at ¶10,12. The Dominican Republic

*Alexander v. Allegro; 00-8560-CIV-RYSKAMP*
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

has special laws which discriminate against foreign litigants, and which promise to tie up a case such as this for years on purely procedural issues (e.g. amount of foreign litigant bond) before even considering the merits of plaintiff's case.  *Id,* at ¶ 11.  Even if ultimately successful, Mrs. Alexander stands to receive only a mere pittance, if anything; and any such monetary award cannot be legally taken out of the country. *Id*, at ¶ 12, 13. Even assuming that she was otherwise inclined to pursue her action in the Dominican Republic (she is not), any such action in the Dominican Republic could be time barred. *Id*, at ¶16.  Any "remedy" for Mrs. Alexander there would thus be illusory at best. The Dominican Republic therefore is not an "adequate alternative forum."  Defendant's affidavit, by Claudia Alvarez Troncoso, Esq., merely asserts that "the law of the Dominican Republic [technically] permits the recovery of damages for personal injury, loss of wages, mental pain and suffering, and in the circumstance of the husband, loss of consortium."  In light of the affidavit of Messrs. Pellerano and Herrera, that is like saying that in the early 1900's the law of Mississippi technically permitted a black person to sue for a civil rights violation in a Mississippi state court.

## III.  THE PRIVATE INTERESTS OF THE PARTIES

The second part of the proper *forum non conveniens* analysis requires a court to weigh the private interests of the parties in trying the case in this forum rather than in the Dominican Republic.  The Supreme Court has indicated that the private factors a court should consider include:

1.    The relative ease of access to proof;

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

2.   the availability of compulsory process for attendance of willing and unwilling witnesses;

3.   the costs of obtaining attendance of willing witnesses;

4.   the ability to view the premises;

5.   the enforceability of a judgment;

6.   all other practical problems that make trial of a case easy, expeditious and inexpensive.

See *Gulf Oil Corp. v. Gilbert* 330 US 501, 508 (1947). These private interests factors must then be weighed against the strong presumption against disturbing the plaintiff's choice of forum. See *La Seguridad*, 707 F.2d at 1307.

In *forum non conveniens* cases involving a potential reference to a foreign court, the relevant distinction is whether or not the plaintiff is a United States citizen, not whether the plaintiff resides in the particular district where the case was brought. *Reid-Walen v Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991). In other words, the "home" forum for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives. *Guidi v. Intercontinental Hotels Corp.*, 203 F.3d 180, 183-84 (2d Cir. 2000). The Supreme Court has emphasized that trial courts must give deference to a plaintiff's forum choice. In *Gilbert*, *supra*, the court stated, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 US at 508, 67 S.Ct. at 843. Although such choice is not to be given dispositive weight, jurisdiction should be declined only in "exceptional circumstances." *Id.* at 504 67 S.Ct. at 841.

5

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

Of the only two defendants now moving for dismissal, one is a Florida corporation, and the other is a Spanish citizen who at least in the recent past (if not the present) has been the president of that corporation (Exhibit 2, attached).  Most of the remaining foreign corporations, such as Allegro Resorts Corporation et al., have just been served and have not yet appeared or joined in the motion to dismiss.  Where only a forum resident seeks dismissal, this fact should weigh strongly against dismissal. See *Manu International, SA v. Avon Products*, *Inc.* 641 F.2d 62, 67 (2nd Cir 1981)(finding the district judge abused discretion in a dismissing case in which defendant's home office was located in forum).

The location of key witnesses favors denial of this motion.  In deciding this issue, a district court is required to examine the materiality and importance of the anticipated witnesses testimony and then determine their accessibility and convenience to the forum.  *Reid-Walen v. Hansen,* 933 F.2d at 1396.  The burden is on the defendant to provide these facts by way of affidavit or other information. *Id.* In the present case, the only thing the defendants have done, in paragraph 6 of the Troncoso affidavit, is to present a laundry list of individuals and addresses.  There is no showing of the materiality of the Dominican persons, of what they know, and why their testimony would be crucial to the case.

The plaintiff's affidavit (Exhibit 3, attached), on the other hand, demonstrates the presence of witnesses in the United States with material testimony, such as plaintiff's physicians (concerning damages), her cousin and traveling companion, Tonya Coates, (concerning liability and damages); and the other female guest who was similarly

6

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

victimized by an employee of the Allegro Resorts Bavaro within twenty-four (24) hours prior to the Alexander incident. This woman resides in Virginia.[1] Moreover, the plaintiff has just taken and filed the 30(b)(6) deposition of Allegro Resorts Marketing Corporation (deposition and exhibits filed in court file), which demonstrates that by December 1999, somewhere between 35-40% of the customers at the Allegro Resort Bavaro came from the United States. ARMC depo at 137-38, 140. If any of these United States customers are identified as material witnesses, they will be accessible in the United States and not in the Dominican Republic.

A comparison of the relevant civil procedure rules of the United States District Court with those of the Dominican Republic, shows that all of the witnesses in the United States (and there are several) would be subject to compulsory service of process and depositions, at least, issued out of the U.S. District Court. Now that most of the relevant corporate defendants have been served, and assuming they are otherwise amenable to jurisdiction here, they can be required by this court to produce corporate employees and documents for depositions at a convenient location (including the Dominican Republic if they want) upon appropriate notice. One could not compel any of these witnesses to give trial or deposition testimony at all, however, if the case were in the Dominican Republic. *Pellerano/Herrera affidavit at ¶10(c)*.

The recent 30(b)(6) deposition of Allegro Resorts Marketing Corporation also demonstrates a lack of inconvenience, and a lack of unfairness, to the corporate

---

[1] The liability part of this case is not particularly complicated. Are the current defendants legally responsible for the resort and/or each other; did the perpetrator rape the plaintiff; and was the incident foreseeable? Defendants have not shown, or even argued, that viewing the premises is essential, or cannot be accomplished through photographs.

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

Dominican defendants if the case remains in Florida.  Mr. Gonzales, the executive vice

president of Allegro Resorts Marketing Corporation, testified that the Allegro Resorts

Bavaro is part of a "chain" and is exclusively advertised and promoted in the United

States by the Allegro Resorts Marketing Corporation of Miami.  *ARMC depo, at 86-95,*

*130-31.*  By Gonzales' description, his fourteen-man operation in Miami is little more

than a branch office for Allegro Resorts Corporation, which according to Gonzales,

exercises direct operational control over both Allegro Resorts Marketing Corporation

and individual resorts such as Allegro Resorts Bavaro. *ARMC depo at 10, 74-75, 160-*

*61.* Gonzales could not even tell us who the president of his own company was. *Id* at 9,

17.  He reports on a daily basis to his "boss" in Santo Domingo, who is a vice president

of the Allegro Resorts Corporation. *Id* at 10, 17-18.  As far as Gonzales knows, there

have never been any board meetings of the Allegro Resorts Marketing Corporation the

entire two and one-half years he has been executive vice president. *Id* at 9, 17. [2]

Plaintiff's claim has a nexus to collective activities by the corporate

defendants in Florida.[3]  The complaint alleges that the "Allegro defendants" undertook

_____

[2]  These precise types of corporate interrelationships and disregard of corporate fictions have supported
jurisdiction in Florida over foreign corporations in cases involving injuries to United States travelers
occurring in foreign countries See e.g. *Jane Doe v. Sun International Hotels Ltd.*, 1999 WL 639816 (97-
3359-CIV-GOLD, February 9, 1999) (finding that several Bahamian and Florida corporations were
involved in a common operation to support personal jurisdiction over all for injury to a U.S. citizen at a
Bahamian resort); *International Graphics, Inc. v. MTA-Travel Ways, Inc.*, 71 F.R.D. 598, 602 (S.D. Fla
1976) (same result, Mexican corporation operating in Florida through a travel office); *Universal Caribbean
v Bard*, 543 So.2d 447 (Fla 4th DCA 1989) (common operation between alien and domestic corporations
supporting Florida jurisdiction over each for injury to guests at Antigua resort); *Crown Colony Club, Ltd. v
Honecker*, 307 So.2d 889 (Fla 3rd DCA 1974) (same result concerning injury in Bahamas); *Lake v.
Lucayan Beach Hotel Co.*, 172 So.2d. 260 (Fla 3rd DCA 1965) (same).

[3]  Such a nexus, although existing in this case, is not even essential to the exercise of personal
jurisdiction, 48.193(2),F.S., let alone to a *forum non conveniens* issue.

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

to promote and advertise the Allegro Resort Bavaro, and were negligent in doing so (*Complaint, ¶22, 24c-d*).  The entire Count III alleges misrepresentation of the Allegro Resort Bavaro by the defendants.  Ms. Alexander's affidavit (Exhibit 3, attached) asserts her reliance on defendants' promotional pieces to select an Allegro vacation over others.  Allegro Resorts Marketing Corporation's Rule 30(b)(6) designee testified that all of the North American advertising and promotion of the Allegro resort "chain" originates from the marketing office in Miami.  Plaintiff's Allegro vacation "package" arose out of an ongoing wholesale agreement among Non-Rev travel agency, the resort operator and Defendant Allegro Resorts Marketing Corporation in Florida. *ARMC depo, at 166-69.* Thus most, if not all, of the witnesses and documents relevant to this aspect of plaintiff's claim are in Florida, not in the Dominican Republic. [4]

Secondly, the affidavit of  Tonya Coates, plaintiff's cousin and traveling companion (Exhibit 4, attached), sets out a Florida connection to the Allegro Resort Bavaro reservation of the plaintiff.  The defendant's Florida operation rerouted and confirmed the plaintiff's Bavaro reservation.  The witnesses and documents relevant to that aspect would likewise be in Florida, not in the Dominican Republic.

Gonzales, the 30(b)(6) designee of Allegro Resorts Marketing Corporation, described multiple business visits to the United States by some of the senior executives of the various Dominican corporate defendants. *ARMC depo at 14-16.* As they come to Florida anyway from time to time, it would not be unreasonable for

---

[4] To be admissible in a Dominican court, such Florida documents, and plaintiff's voluminous medical records, would have to be meticulously translated into Spanish, at prohibitive expense to Plaintiff. *Pellerano/Herrera Affidavit (Exhibit 1), ¶10c.*

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

them to do so for a trial.  Moreover, we have recently received interrogatory answers (Exhibit 5, attached) indicating that <u>all</u> of the relevant corporate defendants (including both Allegro Marketing Corp. and Allegro Resorts Corp.) are covered by a joint insurance policy for this incident, which would pay for their participation in Florida litigation.[5]  This would extend not only to defendants' executives, but also to any employees directed by those corporations to travel to Florida to testify.

The plaintiff would have none of these advantages if the case were litigated in the Dominican Republic. As the affidavit of Messrs. Pellerano and Herrera points out, plaintiff is not going to be able to get a contingency lawyer there. She cannot compel witnesses there.  She cannot depose U.S. witnesses here and use those depositions in a Dominican trial.  Plaintiff would have to finance any litigation there, including the costs of importing those U.S. witnesses, if any, she could persuade to come.  She cannot afford to do so.  This assumes, of course, that such witnesses are alive and can be located after the 2-4 years the case takes to get through the foreign litigant bond appeal and associated stay.  Even if there are Dominican witnesses who are otherwise available, they cannot be forced to testify if the case is litigated in the Dominican Republic.  Plaintiff does not speak Spanish at all.  Most of her damages are emotional and mental.  A rape victim, of all plaintiffs, deserves a fact finder who can at least understand her idiom.

---

[5] Their common, joint insurance policy is yet another indication that the "Allegro" defendants function as a single operation.

10

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

The reality, of course, is that the playing field would be somewhat level throughout the game in the United States, while in the Dominican Republic there would not even be a kick off.

Finally, denying the plaintiff her home forum would force her to choose between abandoning her claim or suffering further extreme emotional damage by returning to the Dominican Republic again. Affidavits from plaintiff's treating physician and therapist (Exhibits 6 and 7, attached) attest to this. Great weight should be given to this factor, which warrants denial of the motion to dismiss. *Guidi v. Intercontinental Hotels Corp.,* 203 F.3rd 180, 186 (2d Cir 2000) (*forum non conveniens* motions denied where survivors would be traumatized by traveling to Egypt for trial).

## IV. THE PUBLIC INTEREST FACTORS

At the outset, we anticipate that the defendant, and possibly the court, will be concerned about "congestion" of dockets in the U.S. District Court for the Southern District of Florida. In this particular case, that should not be a valid reason to grant the motion to dismiss. First of all, Mrs. Alexander did not initiate this case in this court. She filed it in state court; and it was the defendants who removed it here. For the defendants to argue that the case should now be dismissed from here because of a congested federal docket reminds one of the teenager who murdered his parents and then complained about being an orphan.

Secondly, the corporate defendants sued in this case, as a group, have as much (or more) to do with the state of Florida as with the particular spot on the ground in the Dominican Republic where the incident occurred. If one accepts the testimony of Mr.

11

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

Gonzales, Allegro Resorts Marketing Corporation's 30(b)(6) designee, <u>one hundred</u> <u>percent</u> of defendants' North American marketing and promotion of the entire Allegro Resorts chain originates from the Marketing office in Miami. ARMC depo, at 130-31. Fifty percent of the customers for the entire resort chain come from the United States because of aggressive marketing activities through the defendants' Miami operation. *Id,* at 137-38. This Miami office gives the appearance of being little more than a U.S. branch office of the Allegro Resorts Corporation (which exercises direct operational control over both the resorts and the Miami operation). *Id*, at 10, 74-75, 160-61. The 30(b)(6) deposition of Allegro Resorts Marketing Corporation shows that the corporate distinctions urged upon this court by the various affidavits filed by defendants are not recognized on a day-to-day basis by those corporations themselves.  They look upon themselves - and act and promote themselves - as one single operation dominated by the Allegro Resorts Corporation in Santo Domingo. *Id*, at 10, 22, 39-40, 95, 108,135-36, 139, 160-61, 175.

What is the interest of a Federal District Court in Florida in protecting a U.S. citizen from Indiana?  First of all, as previously stated, "the relevant distinction is whether or not the plaintiff is a United States citizen and not whether the plaintiff resides in the particular district where the case was brought." *Reid-Walen v. Hansen*, 933 F.2d at 1394; *Guidi v. Intercontinental Hotels Corp*,  203 F.3d at 183-84. The ultimate "public interest" issue is whether Mrs. Alexander will receive justice like the American citizen

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

she is, or be relegated to the status of a Dominican citizen for purposes of obtaining a remedy, if any.[6]

Most recent cases at the circuit court level have had no difficulty in determining, in cases just like this, that the interest of the United States in protecting its citizens outweighs the local interests of Caribbean islands where injuries to U.S. travelers may occur. For example, in *Lehman v. Humphrey (Cayman) Ltd*, 713 F.2d 339 (8th Cir. 1983) a U.S. citizen sued a Holiday Inn franchisee for the wrongful death of her husband in the Cayman Islands.  The court considered the relative interests of the United States and the Cayman Islands in litigating the dispute.  The Cayman Islands had a local interest in deciding the case; however, this interest was outweighed by the United States' interest in providing a local forum for its citizen.

A few years later, the Seventh Circuit Court of Appeal decided a *forum non conveniens* issue in *Wilson v. Humphreys Ltd.* 916 F.2d 1239 (7th Cir. 1990).  In *Wilson*, the U.S. plaintiff sued a Holiday Inn franchisee (the same defendant as in *Lehman*) to recover from injuries sustained in a Cayman Island assault.  The appellate court held that the United States was a better forum than the Cayman Islands. In reaching this conclusion, the court relied upon the reasoning set forth in the *Lehman* case.

In *Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991) a U.S. citizen sued the American owners of a Jamaican resort for injuries sustained while vacationing in Jamaica. The Eighth Circuit addressed the public interest factors.  The relative interest

---

[6] The plaintiff's brief presence in the Dominican Republic in October 1999 was a fluke.  A hurricane hitting Antigua (her original destination) caused her, while en route, to shift her vacation package to an Allegro Resort in the Dominican Republic. *See Plaintiff's Affidavit (Exhibit 3).*

of the United States and Jamaica in litigating the dispute was considered.  Jamaica had a local interest in the dispute; however, this interest was outweighed by the United States' interest in providing a local forum for its citizen.

In the most recent case, *Guidi v. Intercontinental Hotels Corp*, 203 F.3d 180 (2nd Cir. 2000), the defendant had the same law firm which is defending this case. There, the plaintiffs were U.S. citizens who sued the defendants to recover for injuries and death that resulted from a shooting in Egypt.  The plaintiffs were shot while dining in the defendant's restaurant and claimed the defendant provided inadequate security.  The defendant moved for a dismissal based upon the doctrine of *forum non conveniens*. This motion was granted by the district court.  The Second U.S. Circuit Court of Appeals reversed.  In considering the public interest factors, the circuit court found that the plaintiffs' "home forum," as American citizens was a United States court.  The court further found that under the standard articulated in *Koster v. Lumberman's Mutual*, 330 US 518, 67 S.Ct. 828 (1947), the plaintiffs' decision to sue in a federal district court in New York should not be disturbed if that forum is not so oppressive and vexatious to the defendants as to overwhelm the convenience to the plaintiffs of suing in their home forum.  The circuit court also gave weight to the fact that there would be a significant emotional burden upon the plaintiffs to force them to litigate in Egypt (where their loved ones had been violently murdered). As stated above, the same factors exist in the present case, militating strongly against dismissal.

As a practical matter, requiring defendants like the Allegro defendants to face legal liability in the United States will not hamper tourism growth, but will rather

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

encourage it.  As destinations become safer, sometimes through the impetus of liability, reluctant travelers will be more willing to venture overseas.   Hoteliers and others involved in the tourist industry are not required to guarantee the safety of travelers, but only to provide reasonably safe accommodations that are not overly burdensome to the innkeepers themselves.  As the tourist industry continues to adopt a crime preventative profile and as tourists, themselves, are encouraged to behave responsibly, the travel experience will continue to be beneficial to all involved.  These interests, however, will not be served in the present case, or others like it, by consigning U.S. travelers like Mrs. Alexander to legal oblivion in hostile and unworkable alien forums like the Dominican Republic.

## V.  CONCLUSION

The motion to dismiss for *forum non conveniens* should be denied.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing was furnished by U. S. Mail to: R. Layton Mank, Esquire, 3800 NationsBank Tower, 100 S.E. Second Street, Miami, FL 33131 (Attorney for Defendants Allegro Resorts Marketing Corporation and Alberto Fernandez Del Piño), this _6 TH_ day of October, 2000.

Alexander v. Allegro; 00-8560-CIV-RYSKAMP
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

MICHAEL D. ERIKSEN, ESQUIRE
(Co-Counsel for Plaintiff)
Romano, Eriksen & Cronin
Post Office Box 21349
West Palm Beach, FL 33416-1349
Tel:   561/533-6700

By: _____
        MICHAEL D. ERIKSEN
        FLA. BAR NO.:  316016

cc:     Timothy Rowe, Esquire
        Mr. and Mrs. Alexander

1.- Affiants are both attorneys authorized to practice law in Dominican Republic. Affiant Dr. Juan Manuel Pellerano Gómez is the founder and senior partner of the law firm Pellerano & Herrera, and Affiant Lic. Hipólito Herrera V., is the partner chief of litigation of referred law firm. Affiants makes this affidavit on their own personal knowledge and the law of the Dominican Republic.

2.- Affiant, Dr. Juan Manuel Pellerano Gómez, curriculum  vitae and capacities are:

> Born in Baní on September 7, 1927. education: Superior Normal School (Bachelor in Philosophy and Humanities, 1945). University of Santo Domingo (Doctor in Law, 1950). Founding partner of the Pellerano & Herrera law firm. Professor in the School Juridical Sciences of the University of Santo Domingo, Civil Law (Contracts and Obligations). Was Director of the Practical Teaching Service at the same school. Professor in the School of Juridical and Political Sciences of the Pedro Henriquez Ureña National University, Civil law (Obligations and Liability); Honorary Professor of the School of Law of the Pontifical Catholic University Mater et Magister  and of the School of Law of Nordestana University; Member of the Academy of Sciences. Was Vice President of the Dominican Bar Association. Was Member of the Commission in charge of preparing the bill of the Commercial Code of the Dominican Republic (1975-1977). Was Chairman of the Commission  for the publication  of an official edition of the Commercial Code (1984). Director of the School of Magistrate Court (1998-1999). Member of the Commission for the revision and updating of the Code of Criminal Procedure. Author of the following books: The Attorney's Guide, Vols. I and II, Constitution and Policy and of the Breviary of Judicial Control of Constitutionality; Notes to the book: Divorce in the Dominican Republic, written by Manuel Ubaldo Gómez; Co-author of: Criminal Procedure Law, Tomes I and II; Director of the Judicial Studies Journal and Director of Editora Ediciones Capeldom, which has published numerous books and articles by various law professionals throughout the country. Vice President oh the Hipólito Herrera Billini Association, for the development of Dominican legal culture. Author of the chapter on the Dominican Republic of the book "Conflicts of Law – Common Civil and Maritime" by William Tetley, McGill University. Has practiced the profession of attorney-at-law since his graduation in 1950.

3.- Affiant, Lic. Hipólito Herrera Vasallo, curriculum vitae and capacities are:

2

Born in Washington, D. C., United States.

### Areas of Practice

Litigation, collections, criminal law, international taxes, commercial, corporate, banking and general practice.

### Experience

Pellerano & Herrera, Director Partner Area of Litigation, 1993- to the present. This Department Assists the interests of local and international companies.

### Education

Pedro Henriquez Ureña National University, Licentiate of Law, 1983.

### Publications

The Penalty Clause, 1983.

Articles on Criminal Law in the "Legal Studies" Journal, 1992-94. Co-author of the Legal Guide "The Foreigner in the Dominican Republic".

### Memberships

American Bar Association
International Bar Association
British Chamber of Commerce, Director
Dominican Bar Association

4.- For the purpose of issuing this affidavit we have examined the following documents:

a.-   Complaint presented on April 20, 2000 before the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach Country, Florida, by Victoria Clark Alexander and Antonio Montez Alexander, as Plaintiffs Vs. Allegro Resorts Corporation; Westbrooke Hospitality Corporation; Allegro Resorts Management Services, Inc.; Allegro Executive Services Corporation; Allegro Resorts; Operadora Intercontinental Ac De Resorts y Hoteles, S.A.; Allegro Resorts Dominicana, S.A.; Jack Tar Villages Resorts; Allegro

3

Resorts Marketing Corporation; Alberto Fernández Del Pl[...] y Roberto Jones Rodríguez, as defendants;

- b.-   Civil Code of the Dominican Republic
- c.-   Dominican Code of Civil Procedure
- b.-   Law 834 of July 15, 1978
- d.-   Rulings of the Supreme Court of Justice of the Dominican Republic
- e.-   Law 385 of the year 1932 on Work-related Accidents and its amendments
- f.-   Law 302 on Attorney's Legal Fees and its amendments
- g.-   Law 251 of 1994 on International Fund's Transference Regulation
- h.-   Law 716 of 1944 on Public Duties of the Dominican Consuls
- i.-   Law 4117 of 1955 on Mandatory Vehicle Insurance

5.- According to the complaint, copy of which has been examined by the undersigned, the plaintiffs has presented before the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, United States of America, a claim against the defendants with the purpose of obtaining indemnification for the moral and material damages allegedly suffered by them as a consequence of the fact of Mrs. Victoria Clark Alexander being assaulted and raped during the night while staying at the "Allegro Resort Bavaro" hotel in Dominican Republic, by one of the hotel's employees, named Roberto Jones Rodríguez. The plaintiffs plead that the hotel and co-defendants are responsible as well for being the employers of Mr. Jones Rodriguez, and also for being in charge of the security and care of its guests.

6.- The undersigned, in our capacity of affiants, have been contacted for attorney Michael D. Eriksen, Esquire, legal representative of the plaintiffs in the aforementioned legal action, to gather our legal opinion in regard of Dominican procedural practice applied to the content of the referenced complaint, specifically the following issues:

- Legal procedure for the knowledge, instruction and decision of the case
- Weaknesses and strengths of the Dominican process for the case to be rapidly and efficiently known and decided
- Procedural obstacles of the Dominican process
- Economic indemnification to be possibly obtained in Dominican Republic in the best case scenario

## *Legal Proceedings:*

7.- As a result of the facts allegedly occurred to Mrs. Victoria Clerk Alexander, and the damages suffered by her and her husband as well,

4

they as plaintiffs have the right, according to the Dominican Republic procedural law, of filing an action on redress and indemnification for loss and damages, based on the system established by Article 138? of the Dominican Civil Code, which reads:

*"Article 1382.- Any act of a men that causes damage to another, obliges the one for whose fault the damage occurred to repair it."*

Given that the damage was caused within the hotel's facilities, by one of the employees of the hotel, which is owned or managed by Allegro Resorts, there is not doubt of the fact that the plaintiffs have a cause of action against the hotel, as Mr. Jones Rodriguez's employer, or against any other person causing them damage. The cause of action against the hotel and his owners, is grounded on Article 1382 of the Dominican Civil Code, quoted above, and by Article 1384 of the same Code, which reads:

*Article 1384.- Not solely is one responsible of the damage caused by one's acts, but also of the damage caused by the acts of a person on whose behalf one has to respond, or by the things under one's care......Masters and employers are responsible for the damages caused by his employees in the duties that they are employed..."*

8.- From the viewpoint of the action causing the damages, which are typified as criminal (assault, battery, rape), according to the Dominican procedures, the plaintiffs may choose between the criminal or the civil system, to claim redress and indemnification for loss and damages.

If they choose the criminal way, the author of the damages might be sentenced to prison, and also, sentenced, along with the co-defendants, to pay indemnification to the plaintiffs.

The civil way only provides the plaintiff the opportunity of claiming redress and indemnification for loss and damages against Mr. Roberto Jones Rodriguez and the co-defendants.

9.- The most rational way to decide about this claim will be the civil court, due to the fact that the processes filed before our criminal courts take longer to be decided, and many times they become inactive.

10.- Regarding the process of redress and indemnification for loss and damages before the civil courts, we would like to remark the following:

- It is obligatory for the plaintiffs to be represented by an attorney. The percentage of English-speaking lawyers in Dominican Republic is very low, besides, English-speaking lawyers usually charge to

5

their client high American dollars rates in an hourly basis. 
example, the undersigned's rate is as follows:

Juan Manuel Pellerano G...................US$ 295.00
Hipolito Herrera V.............................US$ 225.00

- Such rates are difficult to be afforded by regular income individuals. It is very unlikely and difficult that an attorney assumes the representation of Mr. and Mrs. Alexander on a contingency basis agreement.

- In this particular case it will be necessary that the plaintiffs present to the court  evidence sustaining the case, including the filing of documents in order to prove their case in Dominican Republic. Also their personal appearance might be required, as well as witnesses depositions. Each of this measures are developed in a different way and in a different moment, involving difficulties as indicated below:

a) In relation to document filings:

According to the Dominican law, all documents mean to be used in a legal process must be presented in the Spanish language, or officially translated into Spanish. The cost for document's translation in Dominican Republic is about US$15.00 per page. This will imply a high cost for the plaintiffs. Also in case of document produced abroad, such as medical reports or any other, in order to be taken into consideration by the court need to be authenticated by the correspondent local authorities, as well as by the nearest Dominican consulate of the placed of their issuance. Said diligences will be considerably expensive. For example, the Dominican consul in Miami charges between US$40.00    to US$60.00 for the authentication of one piece.

b) In relation to personal appearance of the parties:

This measure will imply for the plaintiffs travel costs to the Dominican Republic, hotel rooms and other expenses. More than one appearance in court, far apart one to the other,  might be required. Given that the proceedings  will be conducted in Spanish the plaintiffs will need an official translator at their expense, which normally cost US$15.00 per hour (each hearing may take two to four hours).

6

c) In relation to witness depositions and trial attendance:

If a witness is not willing to appear for deposition or in voluntarily there is no legal way to enforce him to do so. The same occurs with technicians and experts. Our legal system does not provide any mechanism to take a deposition in a foreign country. Evidence submitted in said condition cannot be admitted by the court. Besides, in the event that experts, technicians or witnesses reside abroad, they will have to incur in travel expenses as well as hotel rooms, translators, etc.

11.- In addition to the aforementioned inconveniences, in Dominican Republic exists a discriminatory legal disposition that constitutes a handicap for foreigners when filing a claim before the Dominican courts.

Our legislation requires to provide a judicial bond, identified as "Judicatum Solvi Bond", which consists of a certain amount of money that a non resident must deposit as a bond in order to act as a plaintiff in our Courts of law.  The purpose of this requirement is to grant the local defendant an eventual recovery on the payment of procedural costs and attorney's fees, as well as damages that may arise as a result of a possible counter claim.

This bond is in fact a handicap for any foreign plaintiff that may introduce a lawsuit in our country, since it is mostly used by defendants to delay local judicial processes. Another inconvenience caused by this bond is the absence of a fixed rate to determine the bond's amount, which, according to our legislation, is settled at the judge's discretion. All this undetermined elements, as well as other issues that the defendant may raise can generate  a diversion from the main purpose of the lawsuit and drag the process for a long time. In such sense Articles 16 of the Dominican Civil Code and 166 of the Procedural Code reads:

"Article 16.- In all subjects matter and in all jurisdictions, the non-resident foreigner that is acting as a plaintiff or as a voluntary intervenient, is obliged to present a bond for the payment of the costs and indemnification for loss and damages resulting from the litigious process, unless he possesses in Dominican Republic enough real estate property to guarantee payment."

"Article 166.- The non-resident foreigner that is acting as a main plaintiff or as a voluntary intervenient before any Dominican court, different from the Judge of Peace, if the defendant request it before any other exception, must previously  present a bond for the payment of the costs and indemnification for loss and damages that he might be sentenced to pay".

7

These dispositions or any other do not establish the amount of the or the mechanism to present it (deposit, insurance policy, mort etc.). In most cases where the plaintiff is a foreigner, as in this particular case, the defendant request the judge the presentation of a high amount judicial bond ("Judicatum Solvi Bond") as a way to discourage the plaintiff on his action. The judge might, grant the petition as presented or reduce the amount requested. The consequences of these two decisions are as follows:

    a) If the petition is granted as presented, as we mentioned, requesting a very high amount judicial bond, then it will be very difficult for the foreign plaintiffs to continue with his claim if so requires him to advance monies without guarantee of the eventual results of the claim.

    b) If the amount requested for the judicial bond is reduced by the court, then the defendant has the right to file an appeal remedy against the decision that ordered so. If the court of appeals ruled in confirming the sentence, the defendant will file a appeal remedy before the Supreme Court of Justice. These appeals typically take 2 years or more at each stage (Court of Appeals  and Supreme Court of Justice), and the main case is stayed meanwhile the bon issue is decided.

All the above confirms as we have said, that the issue of the "Judicatum Solvi Bond" can generate  a diversion from the main purpose of the lawsuit and drag the process for a long time.

12.- Let's assume that the case is heard and tried according to Dominican laws and proceedings in Dominican Republic. The Dominican courts have not experience and technical resources to decide claims such as the one filed by Mr. And Mrs. Alexander. They have also very little experience on cases related to mal practice, environmental issues, etc. There is no trial by jury in the Dominican Republic.

Regarding the awards rendered by the court in relation to vehicle accidents claims,  as in the worst case scenario which is the death of someone as consequence of the accident, these awards are usually insignificant (per example US$40,000.00), in addition, in order for the plaintiffs to avoid the term of an appeal remedy, these cases are usually settled for insignificant  amounts.

As another example we would like to mentioned Law 385 of 1932, about "work-related accident", which in case of the dead of the worker establishes a maximum indemnification equivalent to approximately US$3,000.00, including funeral expenses.

8

13.- Another issue that it is interesting to bring up, is the legal impediment of the plaintiff to send abroad from the Dominican Republic any amount that might be obtained as a result of the wining of a suit and the execution of the award.   Law 251 of 1964 regulates "international funds-transferences" from the Dominican Republic, which prohibits the remittance to a foreign country of an amount exceeding the US$10,000.00, except for the cost of importations, services or loans.  The violation of this disposition is sanctioned with penalty of fine and prison. Applying the above to the referenced matter, we conclude that there is not a legal mechanism that allows the plaintiff to remit abroad the money eventually received as a result of their lawsuit.

14.- In the event that the plaintiff's claim is granted, there will be also granted to them an insignificant reimbursement of legal costs incurred throughout the development of the case, because, these costs will be computed according to a very old law, which is the No.302 about "attorney's legal fees" and its amendments, said law establish very small amounts for each legal diligence included. As an example, this law establishes a rate of RD$0.30 for the studying or drafting of one page of the file, and so forth.

15.- For the above indicated reasons, among them, the difficulty of the judicial bond, the length of the processes, the need of an official translator, the lack of regulations to enforce witnesses to appear in court, the high cost of an English-speaking attorney, the very little experience of our courts to decide on certain issues, the very low amounts usually granted by the court for indemnification, etc., we certainly believed that the Dominican Courts are not convenient or favorable for Mr. And Mrs. Alexander to have their case heard and tried.

Our law firm had a recent case where we were representing the interest of a Canadian tourist hit by a truck of an important Dominican company, who as a result of this accident suffered serious injuries, resulting in amputation of a leg above the knee, loss of the hearing capacity of one ear, partial loss of vision on both eyes, serious brain damage, and other wounds that finally disabled him.

After approximately 3 years trying the case before the First Instance Court, and 9 hearings, always postponed due to technical arguments or ungrounded reasons,  the judge ordered his personal appearance. Even though the plaintiffs made every effort and complied with what the judge had ordered, appearing in court as expected, duly accompanied of an official translator, at the same hearing the defendants requested the presentation of the judicial bond, which was ordered on an amount that the plaintiff could not afford. After expending more US$20,000.00 for legal fess and other expenses, the plaintiff lost interest in the case, which



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 00-8560-CIV-RYSKAMP

Victoria Clark Alexander &
Antonio Montez Alexander

Plaintiffs,

Vs.

Allegro Resorts Corporation;
Westbrooke Hospitality Corporation;
Allegro Resorts Management Services, Inc.;
Allegro Executive Services  Corporation;
Allegro Resorts;
Operadora Intercontinental Ac
De Resorts Y Hoteles, S.A.;
Allegro Resorts Dominicana, S.A.;
Jack Tar Villages Resorts;
Allegro Resorts Marketing Corporation;
Alberto Fernández Del Pino
Y Roberto Jones Rodríguez

_____/


## AFFIDÁVIT OF JUAN MANUEL PELLERANO GOMEZ, ESQUIRE AND HIPÓLITO HERRERA VASALLO, ESQUIRE

**THIS DAY PERSONALLY APPEARED BEFORE ME, AN OFFICER DULY AUTHORIZED TO ADMINISTER OATHS, IN MY CAPACITY AS NOTARY PUBLIC OF NATIONAL DITRICT, DOMINICAN REPUBLIC, DR. JUAN MANUEL PELLERANO GOMEZ, ESQUIRE,  AND MR. HIPÓLITO HERRERA V., ESQUIRE, WHO, AFTER** being duly sworn, affirms and says as follows:

FILE NOW-FILING FEE APPEARS AFTER JUNE 15

**FILED**
Sep 08 1997 8:00am
Secretary of State

| PROFIT CORPORATION ANNUAL REPORT 1997 | | FLORIDA DEPARTMENT OF STATE Sandra B. Mortham Secretary of State DIVISION OF CORPORATIONS |
|---|---|---|

DOCUMENT # P93000001802 (6)
1. Corporation Name
ALLEGRO RESORTS MARKETING CORPORATION

| Principal Place of Business | Mailing Address |
|---|---|
| 901 PONCE DE LEON BLVD. STE 400 CORAL GABLES FL 33134 | 901 PONCE DE LEON BLVD. STE 400 CORAL GABLES FL 33134-3073 |

| 3. Date Incorporated or Qualified | 3a. Date of Last Report |
|---|---|
| 01/05/1993 | 07/01/1996 |

| 2. Principal Place of Business | 2a. Mailing Address | 4. FEI Number 65-0394262 | Applied For Not Applicable |
|---|---|---|---|
| 2.1 | 2a | 5. Certificate of Status Desired ☐ | $8.75 Additional Fee Required |
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | 6. Election Campaign Financing Trust Fund Contribution | $5.00 May Be Added to Fees |
| 2.2 City & State | 2a City & State | 7. This corporation has liability for intangible tax under s. 199.032, Florida Statutes. ☐ Yes ☐ No | |
| 2.4 Zip | 2.5 Country | 2a Zip | 2a Country | | |

| 9. Name and Address of Current Registered Agent | 10. Name and Address of New Registered Agent |
|---|---|
| AZ REGISTERED AGENT CORPORATION 2601 SO BAYSHORE DRIVE #1600 MIAMI FL 33133 | 9.1 Name 9.2 Street Address (P.O. Box Number is Not Acceptable) 9.3 City FL 9.4 Zip Code |

11. Pursuant to the provisions of Sections 607.0202 and 607.1508, Florida Statutes, the above-named corporation submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. Such change was authorized by the corporation's board of directors. I hereby accept the appointment as registered agent. I am familiar with, and accept the obligations of, Section 607.0505, Florida Statutes.

SIGNATURE: _____ (NEW) Registered Agent signature required when changing    Date

| 12. OFFICERS AND DIRECTORS | | 13. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 12 | |
|---|---|---|---|
| TITLE PS NAME MEJIA PERILL JUAN TOMAS STREET ADDRESS 901 PONCE DE LEON BLVD. CITY-ST-ZIP CORAL GABLES FL 33134 | ☐ DELETE | 1.1 TITLE President 1.2 NAME Fernández Del Pino, Alberto 1.3 STREET ADDRESS 901 Ponce de Leon Blvd. 1.4 CITY-ST-ZIP Coral Gables, Fl. 33134 | ☐ Change ☐ Addition |
| TITLE VO NAME KAREA, MIGUEL P STREET ADDRESS 901 PONCE DE LEON BLVD. CITY-ST-ZIP CORAL GABLES FL 33134 | ☐ DELETE | 2.1 TITLE VicePresident/Secretary 2.2 NAME Richey, Kent R. 2.3 STREET ADDRESS 901 Ponce de Leon Blvd. 2.4 CITY-ST-ZIP Coral Gables, Fl. 33134 | ☐ Change ☐ Addition |
| TITLE NAME STREET ADDRESS CITY-ST-ZIP | ☐ DELETE | 3.1 TITLE 3.2 NAME 3.3 STREET ADDRESS 3.4 CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE NAME STREET ADDRESS CITY-ST-ZIP | ☐ DELETE | 4.1 TITLE 4.2 NAME 4.3 STREET ADDRESS 4.4 CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE NAME STREET ADDRESS CITY-ST-ZIP | ☐ DELETE | 5.1 TITLE 5.2 NAME 5.3 STREET ADDRESS 5.4 CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE NAME STREET ADDRESS CITY-ST-ZIP | ☐ DELETE | 6.1 TITLE 6.2 NAME 6.3 STREET ADDRESS 6.4 CITY-ST-ZIP | ☐ Change ☐ Addition |

14. I do hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this annual report or supplemental annual report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes, and that my name appears in Block 12 or Block 13 if changed or on an attachment with an address.

SIGNATURE: _____    8/29/97

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case #00-8560-CIV-RYSKAMP

Victoria Clark Alexander &
Antonio Montez Alexander,

      Plaintiffs,

vs.

Allegro Resorts Corporation, et al.

      Defendants.

_____/

## AFFIDAVIT OF PLAINTIFF VICTORIA ALEXANDER

STATE OF INDIANA )

COUNTY OF MARION     )

      COME NOW  Affiant, VICTORIA ALEXANDER, who, after being duly sworn, affirms and says as follows:

1. My name is Victoria Alexander and I am the plaintiff in this case.

2. I make this affidavit based on my personal knowledge.

3. I am a citizen of the United States and a resident of the State of Indiana.

4. My native language is English and I do not speak Spanish.

5. I have been employed as a flight attendant with American Airlines since 1984.

6. I have been married to Tony Alexander since 1988.

7. The trip to Allegro Resort Bàvaro in Dominican Republic, which resulted in my being assaulted, was my first visit to an Allegro Resort.

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Victoria Alexander, Esquire
Page 2

8. I am a safety-conscious person and, for personal safety reasons, I wanted to go to a well-established resort with an international reputation, preferably part of a well-known and substantial hotel chain.

9. As a consequence, I did some research on the internet and learned about the Allegro chain of resorts in the Caribbean. By logging on to Allegro's website, I became familiar with and relied upon, information similar to the Allegro website information attached to my lawyer's affidavit.

10. I contacted a travel agent in Atlanta, Georgia, which catered to airline employees. I mentioned my interest in the Allegro Resort chain in the Caribbean. I discussed my interest in a secure, safe resort.

11. The travel agency provided me with some brochures and other promotional material from Allegro Resorts similar to that which is attached to my lawyer's affidavit. The agency assured me that all of their information was that the Allegro Resorts chain provided a first-class, safe, secure environment for a vacation.

12. Based on that information, I concluded in my mind that the various Allegro Resorts in the Caribbean were a part of a well-known, respected, first-class chain of resorts.

13. In reviewing the Allegro promotional information, it appeared to me that the entire Allegro Resorts were a part of a single operation, with a physical presence in Miami, Florida, which gave the chain even more credibility in my eyes.

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Victoria Alexander, Esquire
Page 3

14. Because of concerns for my own safety, I was specifically trying to avoid going to a resort which gave the appearance of being a local operation indigenous to a particular island.

15. That is exactly what I thought I was doing by deciding to book a package for myself and my cousin with the Allegro chain of resorts.

16. In doing so, I specifically relied upon Allegro's appearance, in its promotional information, of being a large, well-established, integrated operation with a North American presence in the United States.

17. At the time, I had no idea that each Allegro Resort might be locally owned or operated. In fact, such a thought would be directly contrary, in my mind, to the information Allegro put out in its promotional and Internet material.

18. When we booked the package with the travel agent, it was originally planned that we would go to Allegro's Pineapple Beach resort in Antigua. We were given a packet of material by the travel agent, including a confirmation of our reservation with the Pineapple Beach Allegro Resort in Antigua. We were given a telephone number to contact for the hotel, (305) 262-5909. After the fact, I learned that this number rings at the Miami office of Allegro Resorts Marketing Corp.

19. When one calls (305) 262-5909 today, an automated voice answers, beginning with "Thank you for calling Allegro Resorts..." If one asks for reservations, one is then transferred to a reservation call center in Daytona Beach, FL, which handles reservations for the entire Allegro chain.

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Victoria Alexander, Esquire
Page 4

20. We got as far as the airport in San Juan, Puerto Rico when we learned that a hurricane had apparently struck near Antigua. The planes from San Juan to Antigua were cancelled. We were ultimately diverted to the Allegro Resort Bàvaro in the Dominican Republic. We were told by both the travel agency and an Allegro representative that our Antigua package would be honored by Allegro at its Dominican Republic resort and we would not have to pay extra. That turned out to be the case when we reached the Allegro Bàvaro Resort in the Dominican Republic.

21. When we got there, we noticed that many of the employees, including the person who eventually became the perpetrator of my assault, had on uniforms with name tags which had the Allegro logo and "Allegro Resorts" service mark on them.

22. After my incident, I learned that I was not the first person to be assaulted by an employee of this resort. I learned that another female guest had been similarly assaulted by an employee at the same resort the night before my incident happened.

23. As a consumer, you would expect to be warned by the operators of a resort like this about the possibility and proximity of such crimes. The reality of such crimes is totally contrary to Allegro's promotional information, which describes these resorts as "the perfect place to get away from it all," where there are "no unpleasant surprises" -- upon which I relied, to my obvious detriment.

24. I do not want my case tried in the Dominican Republic. My understanding is that there are no jury trials in civil cases there and that judicial proceedings, if any, are conducted entirely in Spanish, which is a language I cannot speak.

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Victoria Alexander, Esquire
Page 5

25.  The injuries which I have suffered are very personal to me, and of an intimate, sexual nature.  It is very important to me that I be able to express myself to the fact finder in my own language, with nuances and subtleties which I do not believe any translator can duplicate.

26.  There were only two witnesses to the actual assault – myself and the perpetrator.  I had encountered the perpetrator a few minutes before, in a group of three employees (including the perpetrator) and my cousin.  I had left that group and was headed back to my room when overtaken by the perpetrator at a fairly remote spot, where the assault occurred.

27.  It is difficult to obtain a Dominican lawyer to take a case of this nature on a contingency basis in the Dominican Republic, in part because it is difficult, if not impossible, to obtain a reasonable compensatory award there.  I cannot afford to pay an hourly fee to a lawyer to pursue this case.

28.  Most, if not all, of the witnesses who would testify in the damages portion of my trial reside in the Indianapolis, Indiana, area.  These include my cousin, Tonya Coates, who was with me at the resort and saw me just before and just after the incident. I have been seen by two psychiatrists, Helio Perez, M.D., and Diane Martin, M.D., and by Cynthia Desadere, who is  Licensed Clinical Social Worker in Indianapolis, IN.  Another important damages witness would be my own husband, Tony Alexander, who lives with me in Indianapolis.   It would not be financially feasible for me to pay for them to come all the way to testify live in the Dominican Republic.   There appears to be no rule of

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Victoria Alexander, Esquire
Page 6

procedure in the Dominican Republic requiring a Dominican judge to admit depositions of such testimony before a Dominican tribunal.  Further, each American deponent would have to testify through an interpreter.

29.  All of these individuals would be expected to testify to my acute and chronic psychological trauma and signs and symptoms of post traumatic stress disorder, which has been diagnosed in my case.

30.  The other woman who was similarly assaulted by an employee at the resort the night before my incident, lives with her husband in the State of Virginia, and there is simply no way I can compel these non-Dominican witnesses to appear live at a trial in the Dominican Republic.

31.  Since Allegro conveys the image of being a large, international chain with a physical presence in the United States, and since I relied on that representation when booking with them, it is only fair that they be required to try the case in Florida, where they claimed – and still claim - to be.

FURTHER AFFIANT SAYETH NAUGHT.

VICTORIA ALEXANDER

STATE OF _Indiana_ :

COUNTY OF _Marion_ :

BEFORE ME, the undersigned, duly authorized to take acknowledgements in the State and County aforesaid, personally appeared VICTORIA ALEXANDER, known to me to be the person designated in the foregoing, or who has produced a driver's license as identification and who did take an oath, and who acknowledged before me that she executed the same freely and voluntarily for the purposes described therein.

SWORN TO AND SUBSCRIBED before me this _3_ day of _August_, 2000.

NOTARY PUBLIC
My commission expires: _Sept 29, 2006_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case #00-8560-CIV-RYSKAMP

Victoria Clark Alexander &
Antonio Montez Alexander,

      Plaintiffs,

vs.

Allegro Resorts Corporation, et al.

      Defendants.

_____/

## AFFIDAVIT OF TONYA COATES

STATE OF INDIANA      )

COUNTY OF MARION     )

     COME NOW  Affiant, TONYA COATES, who, after being duly sworn, affirms and says as follows:

    1.    My name is Tonya Coates.

    2.    I make this affidavit based on my personal knowledge.

    3.    I am a citizen of the United States and a resident of 7048 Kingswood Court, Apt. 308, Indianapolis, IN 46256.

    4.    I am a first cousin of the Plaintiff, Victoria Alexander.

    5.    In October, 1999, Vicki Alexander and I traveled to the Allegro Resort Bávaro pursuant to an Allegro vacation "package" deal which had an original destination to the Allegro Resort at Pineapple Beach, Antigua.

    6.    When Vicki and I reached our intermediate stop in Puerto Rico, we discovered at the airport that flights to Antigua were canceled due to a recent hurricane.

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Tonya Coates
Page 2

7.    On October 21, 1999, while at the airport in Puerto Rico, I placed a call to 305-262-5909, which was a number we had been given to contact Allegro if we had any questions or difficulties with the trip.

8.    I had a 17-minute telephone conversation with at least two people who identified themselves as representatives of "Allegro" or "Allegro Resorts" while I was connected to 305-262-5909.

9.    My telephone bill, which shows this call to that number, and the 17-minute duration of that call, is attached as Exhibit 1.

10.    A page from the 1999 White Pages telephone book for Metropolitan Dade County is attached as Exhibit 2.  This shows that the phone number in question, 305-262-5909, was assigned to "Allegro Resorts Marketing Corp." at 6303 Blue Lagoon Drive, Miami, FL.

11.    I made the call on behalf of myself and my cousin, Vicki Alexander, and so advised the Allegro representatives who responded to the phone call.

12.    During the course of the 17-minute conversation, I explained our difficulties to the Allegro representatives that I spoke with.   We discussed the Allegro Resort Bávaro in the Dominican Republic as a suitable alternative to Antigua.  (There were planes still flying from Puerto Rico to the Dominican Republic.)  I wanted to know whether or not the Allegro "package" we had purchased for Antigua would be honored by Allegro at their Bávaro Resort in the Domincan Republic.  I also asked the Allegro representatives whether the Allegro Resort Bávaro was overbooked.  The Allegro representatives I spoke to at their Miami number assured me that our "package" would be accepted at their Bávaro resort, and that we might even receive a refund to the extent that the Allegro Resort Bávaro was a lesser

Alexander v. Allegro; Case No. #00-8560-CIV-RYSKAMP
Affidavit of Tonya Coates
Page 3

resort than the Pineapple Beach, Antigua, Allegro Resort. I was told that the Bávaro Resort was not overbooked and that we would not have any difficulties in that respect. I was given the name of the supervisor that I spoke to during this 17-minute phone call, and I was told that if we had any further questions or any other difficulties when we reached the Bávaro Resort in Dominican Republic, that I was to give the desk clerk her name and have the desk clerk call her.

13.     The Allegro representatives I spoke to during this 17-minute phone call to Miami gave me the distinct impression from everything they said that they were authorized to make statements, and take certain actions, on behalf of the entire Allegro Resort chain, and my cousin and I relied upon the assurances we received from the Allegro representatives, during my 17-minute phone call to their phone number in Miami, when we decided to go ahead and get on board the plane to take us to the Dominican Republic.

14.     When we arrived at the Allegro Resort Bávaro in the Dominican Republic, the desk clerk there seemed to have advance knowledge of our situation, and that we were transferring our Allegro Antigua "package" to the Allegro Resort Bávaro. While we stood at the front desk, the desk clerk retrieved a piece of paper or a message which had apparently been sent to the Allegro Bávaro Resort confirming the transfer of our "package."

15.     At no time, during my 17-minute conversation with the Allegro representatives who answered my call to their Miami number, was I warned about the risk of crime at the Allegro Resort Bávaro. I certainly would have provided any such information to my cousin, Vicki Alexander.

FURTHER AFFIANT SAYETH NAUGHT.

_Tonya Coates_

TONYA COATES

STATE OF _Indiana_ :

COUNTY OF _Marion_ :

BEFORE ME, the undersigned, duly authorized to take acknowledgements in the State and County aforesaid, personally appeared TONYA COATES, known to me to be the person designated in the foregoing, or who has produced a driver's license as identification and who did take an oath, and who acknowledged before me that she executed the same freely and voluntarily for the purposes described therein.

SWORN TO AND SUBSCRIBED before me this _9_ day of August, 2000.

_Marletta Morgan_

NOTARY PUBLIC
My commission expires:

MARLETTA MORGAN
NOTARY PUBLIC STATE OF INDIANA
MARION COUNTY
MY COMMISSION EXP. APR. 4,2008

Ameritech

INDIANAPOLIS, IN 46266 3077

Page 1 of 3
Account Number 317 578 XXXX XXX
Billing Date OCT 26, 1996

Questions? 1 800 707 XXXX

**Call Detail**

1-800-AMERITECH

| Item No. | Date | Number Called | Where | Time | Rate | Min | |
|---|---|---|---|---|---|---|---|
| 3 | 10-20 | 787 800-0000 | RIO GRANDE PR | 900P | E | 4 | 2.10 |
| | | FROM 787 253-0024 | ISLA VERDE PR | | | | |
| 4 | 10-20 | 787 721-7200 | SANTURCE PR | 934P | E | 2 | 3.10 |
| | | FROM 787 253-0000 | ISLA VERDE PR | | | | |
| 5 | 10-20 | 317 570-0330 | FISHERS IN | 1030P | E | 11 | 3.90 |
| | | FROM 787 857-0000 | RIO GRANDE PR | | | | |
| 6 | 10-20 | 787 800-0000 | RIO GRANDE PR | 1130P | N | 4 | 2.10 |
| | | FROM 787 253-0006 | ISLA VERDE PR | | | | |
| 7 | 10-21 | 270 524-1302 | _____ KY | 1230A | N | 4 | 1.75 |
| | | FROM 787 857-0000 | RIO GRANDE PR | | | | |
| 8 | 10-21 | 305 ___-____ | MIAMI FL | 1077P | D | 17 | 6.__ |
| | | FROM 787 751-0000 | ISLA VERDE PR | | | | |
| 9 | 10-25 | 317 849-2700 | CARMEL IN | 230P | D | 12 | 4.10 |
| | | FROM 787 ___-0074 | ISLA VERDE PR | | | | |
| 10 | 10-25 | 317 570-0330 | FISHERS IN | 1000P | E | 2 | 1.20 |
| | | FROM 787 376-0007 | RIOPIEDRAS PR | | | | |
| | | | | | Total 1-800-AMERITECH | | 23.25 |

Key for Calling Codes:
D - DAY    E - EVENING    N - NIGHT

---

**Account Summary**

Summary of Charges

Other Charges

1-800-AMERITECH                                                23.25

State, Local and Federal Charges

Federal Universal Service Charge                                   .03

Taxes

Tax (batch)                                                       .48

Account Total                                                   24.36

**EXHIBIT "1"**



*The Real White Pages* ®

Visit The Real Yellow Pages® Online.   www.yp.bellsouth.com

# Greater Miami

Including Homestead, North Dade and Perrine



October 1998
Use Until October 1999
Use Hasta Octubre 1999

Includes customer listings for a
local telecommunications companie:

EXHIBIT "2"

ALL PETS SW 8TH ST 305 264-0153

ALL PROFESSIONAL LENDING CORPORATION 305 434-0099

ALL STAR GLASS & MIRROR 305 824-3800

ALL STAR SPORTS SHOP 305 559-3933

ALL TYPE CONSTRUCTION SERVICES INC MIAMI TEL NO- 305 885-1865

ALL-U-CAN-RENT INC 305 261-7771

ALLBRIDGE MELVIN CPA 305 275-9575

ALLEGRO MUSIC 305 442-8948

ALLEN EARL E MD 305 687-0035

ALLEN LAWRENCE S 305 443-1530

ALLEN MORRIS COMPANY THE

ALLENBY JANET DR

ALLEN'S STUDIO 1555 NE 164TH ST NMB 305 945-

ALLEYN JAMES H MD 8958 N KENDALL DR 305 274-

3661 S MIAMI AV 305 854-

ALLI PUMPS INC 305 229-

ALLIANCE APPRAISAL CORP 305 823-

This page is a phone directory / yellow-pages listing with extremely small, degraded text that is largely illegible.

ALL PETS SW 8TH ST .............. 305 264-0153

ALL PROFESSIONAL
LENDING
CORPORATION
.............. 305 436-0099

ALL STAR GLASS &
MIRROR
.............. 305 624-3806

ALL STAR SPORTS SHOP
.............. 305 559-3933

ALL TYPE
CONSTRUCTION
SERVICES INC
MIAMI TEL NO--305 .............. 825-1843

ALL-U-CAN-RENT INC
.............. 305 261-7771

ALLEN EARL E MD
.............. 305 667-0035

ALLEN LAWRENCE S
.............. 305 443-1530

ALLEN MORRIS
COMPANY THE
.............. 305 130-1000

ALLENRIDGE MELVIN CPA
.............. 305 275-9573

ALLEGRO MUSIC
.............. 305 642-0942

ALLENBY JANET DR
.............. 

ALLEN'S STUDIO
1555 NE 164TH ST
NMB .............. 305 945-
.............. 305 945-0

ALLEY JAMES H MD
DPC IN KENDALL
DR .............. 305 274-12
3643 S MIAMI
AV .............. 305 854-36

ALLI PUMPS INC
.............. 305 229-

ALLIANCE APPRAISAL
CORP
.............. 305 823-

5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case Number: 00-8560-CIV-RYSKAMP

VICTORIA CLARK ALEXANDER
and ANTONIO MONTEZ ALEXANDER,

      Plaintiffs,

v.

ALLEGRO RESORTS CORPORATION;
WESTBROOKE HOSPITALITY
CORPORATION; ALLEGRO RESORTS
MANAGEMENT SERVICES, INC.; ALLEGRO
EXECUTIVE SERVICES CORPORATION;
ALLEGRO RESORTS; OPERADORA
INTERCONTINENTAL AC DE RESORTS y
HOTELES S.A.; ALLEGRO RESORTS
DOMINICANA S.A.; JACK TAR VILLAGES
RESORTS; ALLEGRO RESORTS
MARKETING CORPORATION;
ALBERTO FERNANDEZ DEL PINO;
and  ROBERTO JONES RODRIGUEZ,

      Defendants.

_____/

### NOTICE OF FILING SUPPLEMENTAL ANSWERS TO INTERROGATORIES

    The Defendants, ALLEGRO RESORTS MARKETING CORPORATION and

ALBERTO FERNANDEZ DEL PINO, appearing specially, herewith supplement their

earlier answers to interrogatories as follows:

    13.    Yes.

          a.  Independent Insurance Company.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET • SUITE 3800 • MIAMI, FLORIDA 33131
TELEPHONE (305) 374-4400 • FACSIMILE (305) 579-0261

65388.1

b. Allegro Resorts Corporation, Avenida Tiradentes #33, en Sanchez Naco, Dominican Republic, and/or associated and/or subsidiary companies.

c. As noted above.

d. 823/KD9901179.

e. Allegro Resorts Marketing Corporation is an associated company; Mr. Fernandez Del Pino was an officer, or director.

f. U.S.$1,000,000 BI/PD per occurrence; U.S.$2,000,000 aggregate for products/completed operations.

g. $1,500 deductible.

h. Yes.

   (1) Document to be supplied.

i. Unknown.

14. a.    No.

    b.    Yes.

15. See below:

    a.    Commercial liability umbrella.

    b.    $100,000,000 per occurrence and aggregate.

    c.    Allegro Resorts Corporation, address above.

    d.    Aon-Risk Services of Dallas.

16. Yes.

17. The Independent, Number 2 Minster Court, London E63K7KD.

    a.    823/KD9901179.

- 2 -

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET · SUITE 3800 · MIAMI, FLORIDA 33131
TELEPHONE (305) 374-4400 · FACSIMILE (305) 579-0261

65388.1

Case Number: 00-8560-CIV-RYSKAMP

    b.      Any person sustaining personal injury on the insured's premises or operations; $10,000.

    c.      Unspecified.

18.    See above.

19.    See above.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP

BY: _____

STATE OF FLORIDA          )
                              ): ss
COUNTY OF MIAMI-DADE    )

I HEREBY CERTIFY that on this day personally appeared before me, R. LAYTON MANK, attorney for Allegro Resorts Marketing Corporation, upon information supplied to him by telefacsimile on September 5, 2000.

Dated this 22ND day of September, 2000.



Notary Public
State of Florida At Large

My Commission Expires:

√ Personally known to me.

OFFICIAL NOTARY SEAL
MICHELLE ARIAS
COMMISSION NUMBER
CC598794
MY COMMISSION EXPIRES
NOV 20,2000

- 3 -

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
100 SOUTHEAST SECOND STREET · SUITE 3800 · MIAMI, FLORIDA 33131
TELEPHONE (305) 374-4400 · FACSIMILE (305) 579-0261

65388.1

Case Number: 00-8560-CIV-RYSKAMP

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been

sent via U.S. Mail this 22nd day of September, 2000 to: **MICHAEL D. ERIKSEN, ESQ.**,

Romano, Eriksen & Cronin, Post Office Box 21349, West Palm Beach, FL  33416-1349

and **TIMOTHY A. ROWE, ESQ.**, Rowe & Hamilton, 22 East Washington, Suite 600,

Indianapolis, IN  46204.

<div style="margin-left: 50%">

WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
Attorneys for Allegro Resorts Marketing
  Corporation
3800 NationsBank Tower
100 Southeast Second Street
Miami, Florida 33131
(305) 374-4400

By: _____
     R. Layton Mank
     Florida Bar No.: 050050

</div>

- 4 -

65388.1

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.: CL 00-3855 AE

V.C.A. and A.M.A, Husband and Wife,

      Plaintiffs,

vs.

ALLEGRO RESORTS CORPORATION;
WESTBROOKE HOSPITALITY
CORPORATION; ALLEGRO RESORTS
MANAGEMENT SERVICES, INC.; ALLEGRO
EXECUTIVE SERVICES CORPORATION;
ALLEGRO RESORTS; OPERADORA
INTERCONTINENTAL AC DE RESORTS y
HOTELES S.A.; ALLEGRO RESORTS
DOMINICANA S.A.; JACK TAR VILLAGES
RESORTS; ALLEGRO RESORTS
MARKETING CORPORATION;
ALBERTO FERNANDEZ DEL PINO;
and ROBERTO JONES RODRIGUEZ,

      Defendants.
_____/



## NOTICE OF SERVING INTERROGATORIES TO DEFENDANT

**TO:   ALLEGRO RESORTS MARKETING CORPORATION**

      Plaintiffs, by and through their undersigned counsel, propound the attached

Interrogatories, in duplicate, to Defendant ALLEGRO RESORTS MARKETING

CORPORATION to be answered in writing, under oath, within thirty (30) days if received by

mail, or forty-five (45) days if received by original service of process with the complaint herein,

pursuant to Rule 1.340, Florida Rules of Civil Procedure.

1

WE HEREBY CERTIFY that the original and a copy of the foregoing Interrogatories have been furnished to the above-named addressee by hand delivery with original service of process.

TIMOTHY A. ROWE, ESQUIRE
ROWE & HAMILTON
22 EAST WASHINGTON, SUITE 600
INDIANAPOLIS, IN  46204
Tel:  317-632-2524
Co-Counsel for Plaintiffs
and
ROMANO, ERIKSEN & CRONIN
Post Office Box 21349
West Palm Beach, FL 33416-1349
Tel:   561-533-6700
Fax:  561-533-1285
Co-Counsel for Plaintiffs

BY: _____
       MICHAEL D. ERIKSEN
       Florida Bar No.: 316016

cc:    Clients

2

## INITIAL INTERROGATORIES TO DEFENDANT
## ALLEGRO RESORTS MARKETING CORPORATION

1.  Please state the name, address, job title and description of any and all persons who provided information input to your answers to these interrogatories.

2.  At the time of the incident complained of, was the Plaintiff a guest at the Allegro Resort Bavaro in the Dominican Republic?

3.  Please state the full corporate name, date of incorporation, place of incorporation, and address of each and every entity which at the time of the incident complained of, was an owner of Allegro Resort Bavaro in the Dominican Republic.

4.  Please state the complete name, date of incorporation, place of incorporation, and address, of each and every entity which on the date of the incident complained of, managed the Allegro Resort Bavaro in the Dominican Republic.

3

5.  Please state the complete name, date of incorporation, place of incorporation, and address, of each and every entity which on the date of the incident complained of, operated the Allegro Resort Bavaro in the Dominican Republic.

6.  Please state the complete name, date of incorporation, place of incorporation, and address, of each and every entity which on the date of the incident complained of, advertised the Allegro Resort Bavaro in the Dominican Republic.

7.  Please state the complete name, date of incorporation, place of incorporation, and address, of each and every entity which on the date of the incident complained of, employed Roberto Jones Rodriguez.

8.  Please state the complete name, date of incorporation, place of incorporation, and address, of each and every entity which on the date of the incident complained of, supervised Roberto Jones Rodriguez, and state the full name, job title, and all known addresses, of his immediate supervisor(s).

4

9.     Please state how long Robert Jones Rodriguez was an employee at the Allegro Resort Bavaro prior to the incident complained of.

10.    Please state the name, address, employer and job title of all persons who are in custody of the personnel files, if any, pertaining to Roberto Jones Rodriguez.

11.    Did any of the corporate Defendants named in the Complaint receive or possess any adverse information on Roberto Jones Rodriguez prior to the incident complained of?

12.    Did any of the Defendants named in the Complaint have knowledge, prior to the incident complained of, of other alleged sexual harassment and/or assaults on customers at the Allegro Resort Bavaro?  If so, please state the nature and extent of that knowledge and the name and job title of any and all persons having that knowledge.

13.    State whether there is or was in existence any policy of liability insurance which would or might inure to the benefit of the plaintiff herein, by providing for payment of a part of or all of any judgment rendered in favor of the plaintiff against any

5

defendant or against any other person, firm or corporation who is or may be liable to the plaintiff by reason of the incident described in the Complaint, and, if the answer is in the affirmative, state as follows <u>as to each</u> such policy of insurance known or believed to exist by you or your attorneys:

a.    The name and address of the insurer on each such policy.

b.    The name and address of <u>each</u> named insured on each such policy.

c.    The relationship, if any, between each named insured on each such policy and any named defendants in this cause.

d.    The policy number of each such policy.

e.    The name and address of any person, firm or corporation who is or may be an "additional insured" under such policy by reason of the incident described in the complaint, and the relationship, if any between such "additional insured" and any named defendants in this cause.

f.    The limits of liability in such policy as might be applied to any one plaintiff by reason of any one incident and the total limits of liability to all persons by reason of any one incident.

g.    Whether or not any insurer has notified any insured that said insurer or any other person, firm or corporation must pay a part of or all of any judgment before the insurer must make any payment; if so, what payment must be made and by whom before the insurer must make payment.

h.    Whether or not any insurer has notified any insured that said insurer claims that there is or may be no coverage under the terms of the policy of

6

insurance involved.

(1)     If the answer to subparagraph (h) is in the affirmative, describe the reason given for the claimed lack of coverage or failure thereof as stated by said insurer (identifying same) to said insured (identifying same), and state the date of such notice. [NOTE:  If such policy defense is withdrawn or waived, this subparagraph need not be answered.]

i.      The exact name and address of the resident agent of each insurance company.

14.     Are you protected against the type of risk sued hereon by any:

a.      Reinsurance?

b.      Excess insurance?

15.     If your answer to either of the subdivisions of the preceding interrogatory is in the affirmative, for each such coverage, state the name and address of the insurer and the number of the policy.

a.      The form of insurance and the effective dates of coverage.

b.      The amount of coverage.

c.      The name and address of the named insured.

7

    d.      The name, address and telephone number of the person or entity who has possession of the policy and the reinsurance or excess insurance clauses.

16.    Do any of the policies which protect you against the type of risk sued hereon have a provision for medical payments?

17.    If so, for each such policy, state the name and address of the insurer.

    a.      The number of the policy.

    b.      Who is covered by the medical payment clause and the amount of medical coverage per person.

    c.      The total overall amount of medical coverage.

18.    Are immediate medical payments available under the terms of any policy?

19.    If so, identify each policy which provides for immediate medical payments.

8

20. Please state the complete name, address, job title, and current whereabouts, of the agent or employee of Allegro Resorts Marketing Corporation who currently has the most knowledge about its business relationships, if any, with the other corporate Defendants named in the Complaint.

21. Please state as of the date of the incident, the names, job titles (e.g. President, Vice President, etc.) of each and every person who as of the date of the incident complained of, was an officer of the following corporations:

    a.    Allegro Resorts Corporation;

    b.    Westbrooke Hospitality Corporation;

    c.    Allegro Resorts Management Services, Inc.;

    d.    Allegro Executive Services Corporation;

    e.    Allegro Resorts;

    f.    Operadora Intercontinental AC DE Resorts y Hoteles S.A.;

    g.    Allegro Resorts Dominicana S.A.;

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICK OF FLORIDA

### Case #00-8560-CIV-RYSKAMP

|  |  |
|---|---|
| VICTORIA CLARK ALEXANDER & <br> ANTONIO MONTEZ ALEXANDER, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| ALLEGRO RESORTS CORPORATION, et al., | ) <br> ) |
| Defendants. | ) |

### AFFIDAVIT OF CHRISTOPHER SCHRODT

Comes now Christopher Schrodt, and being duly sworn upon his oath, states as follows:

1.      That I am the affiant and have personal knowledge of the facts set forth in this affidavit.

2.      That I am a psychiatrist licensed to practice in the State of Indiana and practice at the St. Vincent Hospital Stress Center in the City of Indianapolis, State of Indiana.

3.      That I am currently counseling Victoria Alexander in reference to a rape incident that occurred at the Allegro Bavaro Resort in the Dominican Republic on October 24, 1999.

4.      That this rape incident has caused tremendous emotional and physical distress to Victoria Alexander and in my professional diagnosis, she suffers from post-traumatic stress disorder related to the rape incident on October 24, 1999.

5.      That I am aware that Ms. Alexander has returned to the Dominican Republic since the rape incident in reference to the prosecution of the rapist and this has caused her tremendous emotional and physical distress having to return to the Dominican Republic.  This has also

caused her to be in an extreme state of emotional distress when she has returned from the Dominican Republic which has not been good for her mental or physical health.

6.      It is my professional opinion that Ms. Alexander should not return to the Dominican Republic for any reason, including the civil trial against Allegro Resorts, as this would be too much of an extreme physical and emotional distress for her and is not in the best interests of Victoria Alexander based upon her post-traumatic stress disorder arising out of this incident and the extreme emotional and physical stress that this would subject Ms. Alexander to in detriment of her mental and physical health. A civil trial in the Dominican Republic will be much more detrimental and stressful to her than a civil trial in the United States.

7.      Further the affiant sayeth not.

_____
Christopher Schrodt

STATE OF INDIANA        )
                        ) SS:
COUNTY OF MARION        )


       Before me, a Notary Public in and for said county and state, duly commissioned and qualified, personally appeared who acknowledged the execution of the foregoing document and who, having been duly sworn under the penalties of perjury, stated that the facts and matters therein set forth are true and correct.

       WITNESS my hand and notarial seal this __26th__ day of September, 2000.


_____
Signed


_____
Printed
Nikki Hunter

2

My Commission Expires:

_____4-22-01_____

County of Residence:

_____Marion_____

3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICK OF FLORIDA

### Case #00-8560-CIV-RYSKAMP

VICTORIA CLARK ALEXANDER     )
ANTONIO MONTEZ ALEXANDER,     )
                                )
        Plaintiffs,            )
                                )
      v.                      )
                                )
ALLEGRO RESORTS CORPORATION, et al.,   )
                                )
        Defendants.         )

### <u>AFFIDAVIT OF CYNTHIA DESADIER</u>

Comes now Cynthia Desadier, and being duly sworn upon her oath, states as follows:

1.     That I am the affiant and have personal knowledge of the facts set forth in this Affidavit.

2.     That I am a licensed counselor with Transitional Counseling which I am owner of said company and have a certification of ACSW, LCSW and LMFT in the State of Indiana and provide counseling services to my clients.

3.     That Victoria Alexander is my client and I have had extensive counseling with her in regards to a rape that occurred at the Allegro Bavaro Resort in the Dominican Republic. It is my professional opinion that Victoria Alexander has suffered extreme emotional distress and trauma from this incident and it is my professional diagnosis that Ms. Alexander suffers from post-traumatic stress disorder which is causally related to the rape incident at Allegro Bavaro Resort.

4.     That Ms. Alexander has had to go to the Dominican Republic in reference to the prosecution of the criminal assailant and rapist and this has caused her to suffer tremendous

emotional and physical distress. After she has come back from the country, she has been

emotionally distraught and suffers increased symptoms of post-traumatic stress syndrome.

5.      It is my professional opinion that it is not in the best interests of Victoria

Alexander that she return to the Dominican Republic and that it is not in her therapeutic best

interest to have to go through a civil trial there. Continued re-exposure might influence severe

emotional and physical distress. A civil trial in the Dominican Republic will likely be much

more detrimental and stressful to her than a civil trial in the United States.

6.      I would not be able to testify live in the Dominican Republic as it would be an

extreme burden and expense to my practice and my clients and too cost-prohibitive for Ms.

Alexander.

7.      Further the affiant sayeth not.


_____
Cynthia Desadier


STATE OF INDIANA     )
                   ) SS:
COUNTY OF MARION   )


     Before me, a Notary Public in and for said county and state, duly commissioned and qualified, personally appeared who acknowledged the execution of the foregoing document and who, having been duly sworn under the penalties of perjury, stated that the facts and matters therein set forth are true and correct.

     WITNESS my hand and notarial seal this __16th__ day of September, 2000.


_____
Signed


2

_Nikki Hunter_
Printed

My Commission Expires:

_4-22-01_

County of Residence:

_Marion_

3